IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-141-JFH |
| CHRISTIAN SCOTT DUNHAM, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is (1) Defendant's Opposed Motion in Limine ("Motion in Limine") [Dkt. No. 54], and (2) Defendant's Motion for Hearing Pursuant to *Daubert/Kumho Tire* ("*Daubert* Motion") [Dkt. No. 55] (together, the "Motions") filed by Defendant Christian Scott Dunham ("Defendant"). The Government filed a response in opposition to Defendant's Motions. Dkt. No. 56. For the following reasons, Defendant's Motions [Dkt. Nos. 54 and 55] are DENIED.

## BACKGROUND

On August 20, 2022, J.S. was found shot in the chest in Poteau, Oklahoma, and was pronounced dead shortly thereafter. Dkt. No. 54 at 1; Dkt. No. 56 at 2. On October 13, 2022, Defendant was charged by Indictment with three counts related to J.S.'s death: (1) Murder in Indian Country – Second Degree, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; (2) Use, Carry, Brandish and Discharge a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii); and (3) Causing the Death of Another Person in the Course of a Violation of Title 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j). Dkt. No. 20.

Until recently, the case against Defendant had been largely circumstantial. Dkt. No. 54 at 1; Dkt. No. 56 at 3. At the time of J.S.'s murder, Defendant had been staying at a residence near

the location where J.S. was shot. Dkt. No. 54 at 1-2. Law enforcement found a Harrington & Richardson model .22 caliber revolver (the "H&R firearm") on the property where Defendant was staying. Dkt. No. 56 at 2. Government expert, J.D. Lindstrom, determined that traces of Defendant's DNA were present on the H&R firearm and, further, witnesses indicated that they had seen Defendant with a similar type of weapon around the time of J.S.'s murder. *Id*. Another Government expert, Samantha Meisinger, examined the bullet recovered from J.S.'s body and concluded that it had specific "lands and grooves" that an H&R firearm would produce, although she could not definitely state whether the bullet recovered from J.S. came from the H&R firearm. *Id*. at 2-3. Additionally, other witnesses stated that Defendant admitted to killing J.S. in the days following the murder. Dkt. No. 56 at 2.

Prior to being indicted in this matter, Defendant was arrested on unrelated charges. Dkt. No. 54 at 2. During a law enforcement interview related to that offense, Defendant denied involvement in J.S.'s murder, but made other statements related to his criminal history and affiliation with the "Savage Boys," a street gang in Oklahoma. *Id*.; *see also* Dkt. No. 56 at 3.

On January 19, 2023, the Government received materials indicating that there was an eyewitness to the shooting: E.W. Dkt. No. 56 at 3. Specifically, E.W. provided information regarding his presence with Defendant at the time of the shooting and circumstances surrounding the shooting, including a potential motive. *Id*. at 3. The Government provided those materials to defense counsel on January 24, 2023. *Id*. at 4.

This case is set on the Court's March 6, 2023 jury trial docket. Dkt. No. 49. Defendant timely filed a Motion in Limine seeking to preclude evidence of Defendant's criminal history, gang affiliation, and "speculative evidence of motive." Dkt. No. 54. Defendant also filed a *Daubert* Motion challenging the qualifications of Government expert, Samantha Meisinger, and

the reliability and relevance of testimony that she may provide at trial. Dkt. No. 55 at 1. Defendant further requested a hearing on his *Daubert* Motion. *Id*.

## DISCUSSION

### I.     Motion in Limine [Dkt. No. 54]

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd,* 402 Fed. App'x 337 (10th Cir. 2010) (quotation and citation omitted). In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context. *Id.* "A court will generally not grant a motion *in limine* unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644-GKF, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

### A. Defendant's criminal history and gang affiliation

Defendant requests the exclusion of any reference to his criminal history or gang affiliation. Dkt. No. 54 at 5. The Government states that it does not intend to present evidence of Defendant's criminal history or gang affiliation in its case-in-chief.[1]  Dkt. No. 56 at 7. However, the Government states that it reserves its right to use Defendant's criminal history and gang affiliation

---

[1] While Defendant's Motion in Limine is titled "opposed," the Government's statement that it does not intend to introduce this evidence in its case-in-chief makes it unclear whether the parties truly conferred regarding the contents of the Motion in Limine. The parties are reminded that they are required to confer prior to filing any motions. *See* E.D. Okla. Crim. R. 12.1(B); *see also* Judge Heil – Chambers Rules, at § 8, https://www.oked.uscourts.gov/sites/oked/files/OKED %20Chambers%20Rules.pdf.

as impeachment evidence under Fed. R. Evid. 613(b).  The Government explains that because it "cannot predict whether Defendant will testify at trial, or what the nature of his testimony will be [ ] it is not requesting a pretrial ruling on the admissibility of this potential impeachment evidence."  Dkt. No. 56 at 8.

Fed. R. Evid. 613(b) permits extrinsic evidence of a witness' prior inconsistent statement "only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."  Fed. R. Evid. 613(b).  The Court agrees with the Government that this issue is not ripe for pretrial determination.  Should the occasion arise at trial where the Government intends to introduce evidence of Defendant's criminal history or gang affiliation under Fed. R. Evid. 613(b), it is instructed to inform the Court outside the presence of the jury so the matter may be addressed in its proper context.  Therefore, Defendant's motion to exclude evidence of Defendant's criminal history and gang affiliation must be denied.

### B.  "Speculative Evidence of Motive"

Next, Defendant requests the exclusion of any "speculative evidence of his potential motive."[2]  Dkt. No. 54 at 9.  However, the Federal Rules of Evidence already safeguard against the presentation of speculative evidence.  *See e.g.,* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.");  Fed. R. Evid. 701 and 802 (protecting against opinion testimony of lay witnesses and hearsay).  The parties are expected to follow the Federal Rules of Evidence and

---

[2] The parties are reminded that they are "discouraged from filing a motion in limine requesting an order that the parties be required to follow the Federal Rules of Evidence.  Any motion in limine filed should concern specific evidence."  Judge Heil – Chambers Rules, at § 8, https://www.oked.uscourts.gov/sites/oked/files/OKED%20Chambers%20Rules.pdf.

the Court need not enter an order directing the parties to do so.  Therefore, Defendant's motion to exclude speculative evidence of motive must be denied.

For these reasons, Defendant's Opposed Motion in Limine [Dkt. No. 54] is DENIED.

## II. *Daubert* Motion [Dkt. No. 55]

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)).

"First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*. 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018).  "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278.  The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

### A. Qualifications

The first step in the *Daubert* inquiry is to determine whether a witness is qualified by knowledge, skill, experience, training, or education to render an opinion. *Lippe*, 287 F.Supp.3d at 1277-78. An expert's qualifications must provide "a foundation for a witness to answer a specific question." *Id.* at 1279 (quotation and citation omitted). An expert's qualifications must be both "(i) adequate in general, qualitative sense (i.e., knowledge, skill, experience, training, or education as required by Rule 702) and (ii) specific in the matters he proposes to address as an expert." *Id.* An expert cannot provide an opinion regarding matters on which his background and training do not provide a proper foundation. *See English v. Estes Express Lines*, No. 5:16-CV-01353-CAS, 2018 WL 1136058, at *6 (C.D. Cal. Feb. 15, 2018).

The Government's expert, Samantha Meisinger ("Meisinger") is a Criminalist Firearms and Toolmarks Examiner with the Oklahoma Bureau of Investigation ("OSBI"), a position she had held for the past four (4) years. Dkt. No. 53 at 1; Dkt. No. 53-1. "In this role, Ms. Meisinger examines and analyzes firearms, ammunition, and ammunition components, as well as chemically restores obliterated serial numbers, while maintaining chain of custody." Dkt. No. 53 at 1. OSBI is one of the main investigative bureaus in Oklahoma. The Court has no doubt that Meisinger has accumulated sufficient firearms and toolmark examination experience in this role. Additionally, Meisinger has an advanced degree in forensic science and criminal justice, as well as several certificates indicating specialized training in her field. *See* Dkt. No. 53-1. This is sufficient for the Court to conclude that Meisinger is qualified by knowledge, skill, experience, training, and education to testify as an expert in firearms and toolmark examination.

### B. Relevancy and Reliability

After concluding a witness is qualified as an expert, the Court must evaluate whether her opinion is relevant and reliable. *Lippe*, 287 F. Supp. 3d at 1278. Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (internal citation omitted).

Defendant argues that because Meisinger "cannot conclude that the bullet extracted from the body of J.S. was shot from the firearm at issue in this case, there is a legitimate question" as to the relevance of her testimony. Dkt. No. 55 at 3. However, the question of relevance is not whether Meisinger can definitively state what happened in this case, but rather whether Meisinger's testimony will assist the jury in understanding the evidence presented. *See Daubert*, 509 U.S. at 591; *Wilson*, 303 F.3d at 1219. While jurors may be generally familiar with firearms, most jurors lack the technical knowledge to interpret the specific "lands and grooves" produced on bullets when discharged from a firearm. Because Meisinger's testimony will assist the jury in interpreting evidence—namely, the bullet recovered from J.S.'s body—the Court concludes that Meisinger's testimony is relevant.[3]

The Court next considers whether the evidence is reliable. In making the reliability determination, the Court must focus on "principles and methodology, not on the conclusions that

---

[3] Had Meisinger's findings determined that the bullet extracted from the body of J.S. could not have been fired from the H&R Firearm (*e.g.*, because of different "lands and grooves" than the H&R Firearm would produce), certainly Defendant would be quick to note the relevance of such evidence – and support its admission.

they generate." *Daubert*, 509 U.S. at 595. The Tenth Circuit has cited four factors that district courts should apply to make a reliability determination:

> (1) Whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). *Daubert* recognizes that these factors are not a "definitive checklist." *Daubert,* 509 U.S. at 593; *Kumho Tire*, 526 U.S. at 150-51. A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. Whether another court has accepted a methodology is relevant in determining whether expert testimony is reliable. *Att'y Gen. of Okla. v. Tyson Foods Inc.*, 565 F.3d 769, 780 (10th Cir. 2009). An expert witness may rely on his or her experience in that field if the witness "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendment)).

Defendant argues that Meisinger's testimony is "speculative" and, therefore, unreliable. Dkt. No. 55 at 3. The Government explains that Meisinger used the Association of Firearms and Toolmarks Examiners ("AFTE") method to examine the bullet recovered from J.S.'s body. Dkt. No. 56 at 11. Using the AFTE method, "a qualified examiner can determine whether two bullets were fired by the same gun by comparatively examining bullets and determining whether 'sufficient agreement' of toolmarks exist." *United States v. Hunt*, 464 F.Supp.3d 1252, 1256 (W.D. Okla. 2020) (citing *Ricks v. Pauch*, No. 17-12784, 2020 WL 1491750, at * 8-9 (E.D. Mich., 2020)). The AFTE method has been deemed admissible by several courts. *See e.g., United States*

8

*v. Hicks*, 389 F.3d 514 (5th Cir. 2004); *United States v. Johnson*, 875 F.3d 1265, 1281 (9th Cir. 2017).

1. *Whether the particular theory has been or can be tested or falsified*

The AFTE method can be and has been tested. *See, e.g.,* THE ASSOCIATION OF FIREARM AND TOOL MARK EXAMINERS, *Testability of the Scientific Principle* (last visited Feb. 2, 2023), https://afte.org/resources/swggun-ark/testability-of-the-scientific-principle (collecting studies). Several courts have held similarly. *See Hunt*, 464 F.Supp.3d at 1257 ("Put simply, the theory of firearm toolmark identification can be and has been tested.") (citing *United States v. Taylor*, 663 F. Supp. 2d 1170, 1176 (D.N.M. 2009) ("[T]he methods underlying firearms identification can, at least to some degree, be tested and reproduced"); *United States v. Romero-Lobato*, 379 F.Supp.3d 1111, 1118–19 (D. Nev. 2019) (collecting cases where "federal courts have held that the AFTE method can be and has been frequently tested" and holding the same)). The Court finds that this factor weighs in favor of admissibility.

2. *Whether the theory or technique has been subject to peer review and publication*

The AFTE method is subject to peer review and publication through the AFTE Journal. THE ASSOCIATION OF FIREARM AND TOOL MARK EXAMINERS, *What is the Journal* (last visited Feb. 2, 2023), https://afte.org/afte-journal/what-is-the-journal ("All manuscripts published in the AFTE Journal are reviewed for scientific validity, logical reasoning, and sound methodology. Where applicable, a double-blind peer review method will be used."). Again, several courts have held similarly. *See Hunt,* 464 F.Supp.3d at 1257 (citing *United States v. Ashburn*, 88 F.Supp.3d 239, 245–46 (E.D.N.Y. 2015) (finding that the AFTE method has been subjected to peer review through the AFTE Journal); *United States v. Otero*, 849 F.Supp.2d 425, 433 (D.N.J. 2012) (describing the AFTE Journal's peer reviewing process and finding that the methodology has been subjected to

9

peer review); *Taylor*, 663 F.Supp.2d at 1176 (finding that the AFTE method has been subjected to peer review through the AFTE Journal and two articles submitted by the government in a peer-reviewed journal about the methodology); *United States v. Monteiro*, 407 F.Supp.2d 351, 366–67 (D. Mass. 2006) (describing the AFTE Journal's peer reviewing process and finding that it meets the *Daubert* peer review element)). The Court finds that this factor weighs in favor of admissibility.

> 3. *Whether there are known potential rates of error with regard to specific techniques*

Several courts have found that there are known potential rates of error related to the AFTE method. *See Hunt*, 464 F. Supp. 3d at 1258 (citing *Romero-Lobato*, 379 F. Supp 3d at 1117–18; *United States v. Otero*, 849 F. Supp. 2d 425, 433–34 (D.N.J. 2012); *Ashburn*, 88 F.Supp.3d at 246 ("the error rate, to the extent it can be measured, appears to be low, weighing in favor of admission"); *Taylor*, 663 F. Supp. 2d at 1177 ("this number [less than 1%] suggests that the error rate is quite low"); *Monteiro*, 407 F. Supp. 2d at 367–68 (finding that although it could not calculate an absolute error rate for firearm toolmark identification, the known error rate is not "unacceptably high.")). The Court finds that this factor weighs in favor of admissibility.

> 4. *Whether the theory or approach has "general acceptance"*

Several courts have found that the AFTE method is widely accepted in its field. *Hunt*, 464 F.Supp.3d at 1259-60 (citing *Romero-Lobato*, 379 F.Supp.3d at 1122 (collecting cases finding the AFTE theory to be widely accepted in the relevant community and finding the same); *Ashburn*, 88 F.Supp.3d at 246 (finding the AFTE method to be "the field's established standard")). The Court finds that this factor weighs in favor of admissibility.

### C. Hearing

Finally, the Court denies Defendant's request for a hearing on his *Daubert* Motion. Dkt. No. 55. "Daubert does not mandate an evidentiary hearing." *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 2019)); *see also Kumho Tire,* 526 U.S. at 152 ("The trial court must have the ... latitude ... to decide whether or when special briefing or other proceedings are needed to investigate reliability"). Considering the parties' briefing, in addition to the *Daubert* and Rule 702 analysis above, the Court finds that a hearing is not necessary.

Because all the factors weigh in favor of admissibility, the Court finds that Meisinger's testimony is admissible under Fed. R. Evid. 702. Defendant may, of course, cross-examine Meisinger on her qualifications and the AFTE method. For these reasons, Defendant's *Daubert* Motion [Dkt. No. 55] is DENIED.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Opposed Motion in Limine [Dkt. No. 54] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Hearing Pursuant to *Daubert/Kumho Tire* [Dkt. No. 55] is DENIED.

DATED this 7th day of February 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE